## CALIFORNIA POWDER WORKS *v.* DAVIS.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 301. Submitted January 8, 1894. — Decided January 22, 1894.

Two parties claiming title to the same land in California, each under a Mexican grant made prior to the treaty of Guadalupe Hidalgo, and each under a patent from the United States, one of them filed a bill in equity against the other in a District Court in San Francisco to quiet

title. The cause was transferred to the Superior Court for that city and county, and being heard there, it was decreed that the defendant's title was procured by fraud, and the relief sought for was granted. On appeal to the Supreme Court of the State the judgment was affirmed, the court saying that the question of the genuineness of each original grant was a legitimate subject of inquiry, when the issue was made by the pleadings, and that on the evidence in the case the finding against the genuineness of the defendant's grant would not be disturbed on appeal. *Held*, that this ruling presented no Federal question for the consideration of this court.

What is necessary to give this court jurisdiction on writ of error to the highest court of a State again stated.

This court does not deem it necessary to examine the question raised under the practice in California, allowing separate appeals to lie from a judgment and from an order granting or refusing a new trial.

THIS was a suit in equity brought by Isaac E. Davis, for whom his administrator, Willis E. Davis, was duly substituted, and Henry Cowell, against the California Powder Works in the District Court of the Fifteenth Judicial District of California in and for the city and county of San Francisco, and subsequently transferred to the Superior Court of said city and county, to quiet plaintiffs' title to certain lands in Santa Cruz County, California. Both parties claimed title under patent from the United States; plaintiffs, through Pedro Sainsevain, patentee of the rancho Cañada del Rincon en el Rio San Lorenzo; defendant, through William Bocle, patentee of the tract called La Carbonera.

The case having been heard, the Superior Court made special findings of fact, and found as a conclusion of law that the plaintiffs were entitled to a decree according to the prayer of the bill.

From the findings it appeared that Sainsevain's patent was based on a concession of July 10, 1843, the grant being duly approved June 10, 1846; that the archives of the Mexican government contained a full record of the proceedings; that the claim was confirmed January 17, 1854, by the land commissioners of the United States, duly organized under acts of Congress in that behalf, and their decree made final by the dismissal of an appeal therefrom by the District Court of the United States for the District of California; that a survey

was duly had, and that the patent issued June 4, 1858. As to Bocle's patent, it appeared that the grant to him bore date February 3, 1838; that it was confirmed January 23, 1855, and that a patent subsequently issued, (July 7, 1873,) but it was found that the grant had been falsely antedated, and that it was made in the year 1848; that "there is not and never has been any paper, document, writing, or entry in any book or record in the Mexican archives pertaining to California relating to said alleged grant or concession to said Bocle; nor is the same noted in a book called the Jimeno's Index, nor has said purported grant any map or diseño attached to it, nor is any such map or diseño referred to. And at the said date, the 3d of February, 1838, said Bocle was not a naturalized citizen of Mexico, but was a subject of the Kingdom of Great Britain and Ireland;" that the decree of confirmation by the land commissioners of the alleged grant to Bocle was obtained by fraud, "the said fraud consisting of the fact that no such grant was made to said Bocle for said land, and said paper purporting to be such grant was false, simulated and fabricated, and made after the conquest of California by the United States from the Republic of Mexico, and in or about the year 1848, and was fraudulently imposed upon said board of land commissioners as valid and genuine. And the dismissal of the appeal therefrom to the United States District Court was likewise procured by the same fraud and by the concealment of said facts of the fabrication of said pretended grant from the United States authorities acting in that behalf. And said land commissioners and said authorities were each and all ignorant of any such fraud, and of the fact that said alleged grant was false and simulated, and were misled and deceived by the false allegations of the said Bocle in that behalf."

A decree in plaintiffs' favor having been entered, defendant moved for a new trial, which was denied, and an appeal was thereupon taken to the Supreme Court of California from the order denying said motion, by which that order and the judgment were affirmed.

The Supreme Court of California, (84 California, 617,) among other things, held: "Where both parties to an action to quiet

title claim the land in dispute under patents confirming Mexican grants, the question of the genuineness of each original grant is a legitimate subject of inquiry in the action, provided such inquiry is admissible under the pleadings; and it may be shown in such case that the grant bearing the oldest date was not made during the term of office of the Mexican governor whose signature it bears, and that it was fraudulently antedated. When the evidence in such action shows that there is no official paper appertaining to an alleged Mexican grant, nor any record or trace thereof, which appears anywhere in the archives of California when a part of Mexican territory, a strong presumption arises against the genuineness of the grant, which can only be overcome by the clearest proof of its genuineness; and when the oral testimony of witnesses, offered in support of such genuineness, is of an inconclusive or suspicious character, a finding against the genuineness of the grant will not be disturbed upon appeal."

Application for a rehearing was made and overruled, and thereupon a petition for the allowance of a writ of error from this court was presented in which it was set forth that petitioner claimed the land in controversy under the treaty of Guadalupe Hidalgo, and under a certain statute of the United States entitled "An act to ascertain and settle private land claims," approved March 3, 1851; that such lands were ceded to the grantor of petitioner by the Republic of Mexico in 1838; that such concession was confirmed by the government of the United States, and a patent therefor issued to the petitioner's grantor under the laws of the United States; that such concession and the patent thereon issued were attacked by the bill in equity alleging that the concession was not actually made until 1848; that on issue joined on that allegation, trial was had and plaintiffs below secured the entry of a judgment that theirs was the better title; that the decision of the Supreme Court of the State of California in the cause, was and is against a title and right claimed by petitioner under the treaty and the statute of the United States, approved March 3, 1851. The writ of error was allowed and the case came on on a motion to dismiss.

*Mr. A. T. Britton, Mr. A. B. Browne, Mr. J. H. McKune,* and *Mr. W. F. George* in support of the motion.

*Mr. John Garber, Mr. John H. Boalt,* and *Mr. Thomas B. Bishop* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is axiomatic that, in order to give this court jurisdiction on writ of error to the highest court of a State in which a decision in the suit could be had, it must appear affirmatively not only that a Federal question was presented for decision by the highest court of the State having jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided or that the judgment as rendered could not have been given without deciding it. And where the decision complained of rests on an independent ground, not involving a Federal question and broad enough to maintain the judgment, the writ of error will be dismissed by this court without considering any Federal question that may also have been presented. *Eustis* v. *Bolles,* 150 U. S. 361. It is equally well settled that where our jurisdiction depends upon the denial by a state court of a title, right, privilege, or immunity claimed under the Constitution, or any treaty or statute of the United States, it must appear on the record that such title, right, privilege, or immunity was specially set up or claimed at the proper time and in the proper way, and that the decision was against the right so set up or claimed. *Schuyler Bank* v. *Bollong,* 150 U. S. 85, 88. We cannot find that the title or right referred to in argument was specially set up or claimed prior to its assertion in the petition for the writ of error, which forms no part of the record of the court below. *Clark* v. *Pennsylvania,* 128 U. S. 395.

But such special claim, if duly made, would have been unavailing, as the judgment rested upon the proposition that the grant under which the plaintiff in error deraigned title was simulated, and this was a ground sufficient to sustain it

involving no Federal question. The parties claimed under separate private land claims, originating, as alleged, under the Republic of Mexico, and separately confirmed, surveyed, and patented by the authorized officers of the United States.

The eighth article of the treaty of Guadalupe Hidalgo, 9 Stat. 922, 929, provided: "In the said territories, property of every kind, now belonging to Mexicans not established there, shall be inviolably respected. The present owners, the heirs of these, and all Mexicans who may hereafter acquire said property by contract, shall enjoy with respect to it guaranties equally ample as if the same belonged to citizens of the United States."

Upon the acquisition of the country, the rights of the inhabitants to their property were retained, and they were entitled by the law of nations to protection in them to the same extent as under the former government, which protection the treaty also secured. As remarked by Mr. Justice Field in *Beard* v. *Federy*, 3 Wall. 478, 492, " the obligation, to which the United States thus succeeded, was of course political in its character, and to be discharged in such a manner and on such terms as they might judge expedient. By the act of March 3, 1851, c. 41, they have declared the manner and the terms on which they will discharge this obligation." This act created a special tribunal for the investigation of claims to land and the determination of their validity as respected the United States. 9 Stat. 631, 634. By section fifteen it was enacted: " That the final decrees rendered by the said commissioners, or by the District or Supreme Court of the United States, or any patent to be issued under this act, shall be conclusive between the United States and the said claimants only, and shall not affect the interests of third persons."

While the confirmation of these claims might be conclusive as against the United States and those claiming under them, such confirmation and patent could have no effect upon the interests of third persons in respect of grants to them from the former sovereign. The state courts were open for the determination between individuals of the priority or validity

of conflicting titles under different grants from the same ante-
cedent source, and the issue as to whether one of the two grants
was forged or obtained by fraud did not involve the denial of
a right or title set up under the treaty or the statute. The
treaty extended no protection to a fraudulent claim, nor did
proceedings under the statute to which each was respectively
not a party or privy determine any such question as between
these private parties, neither of whom claimed under the
United States by title subsequent, but both of whom claimed
under patents based upon Mexican grants. *Lynch* v. *Bernal*,
9 Wall. 315, 323. The case was the ordinary one of a contest
in respect of a forged or fraudulent deed. In *Phillips* v.
*Mound City Association*, 124 U. S. 605, 610, it was ruled that
the adjudication by the highest court of a State that certain
proceedings before a Mexican tribunal, prior to the treaty of
Guadalupe Hidalgo, was insufficient to affect the partition of
a tract of land before that time granted by the Mexican gov-
ernment, which grant was confirmed under the act of March
3, 1851, presented no Federal question; and Mr. Chief Justice
Waite, delivering the opinion of the court, said: "Article
VIII of the treaty protected all existing property rights
within the limits of the ceded territory, but it neither created
the rights nor defined them. Their existence was not made to
depend on the Constitution, laws, or treaties of the United
States. There was nothing done but to provide that if they
did in fact exist under Mexican law, or by reason of the action
of Mexican authorities, they should be protected. Neither
was any provision made as to the way of determining their
existence. All that was left by implication to the ordinary
judicial tribunals. Any court, whether state or national, hav-
ing jurisdiction of the parties and of the subject-matter of
the action, was free to act in the premises." The case is in
point and is decisive. *Martin* v. *Hunter*, 1 Wheat. 304, is not
to the contrary, for there the plaintiff claimed under the treaty
of 1783, and the state court decided against the title thus
set up.

We have not deemed it necessary to examine the question
raised under the practice in California allowing separate

appeals to lie from a judgment and from an order granting or refusing a new trial, and for the purposes of this case have treated the judgment of the Supreme Court, which not only affirmed the order of the Superior Court overruling the motion, but the judgment as well, as the last and final judgment in affirmance of a final decree in equity in the court below.

*Writ of error dismissed.*