CRYSTAL SPRINGS LAND & WATER CO. et al. v. CITY OF LOS ANGELES

(Circuit Court, S. D. California. August 3, 1896.)

No. 583.

1. JURISDICTION—FEDERAL COURTS—MEXICAN GRANTS.
   The fact that both parties claim under Mexican grants, confirmed and patented by the United States, in accordance with the provision of the treaty of Guadalupe Hidalgo, protecting all existing property rights, does not render the suit one arising under that treaty, so as to confer jurisdiction on a federal court.

2. SAME—CONSTITUTIONAL QUESTION.
   In order to confer jurisdiction of a suit as arising under the United States constitution, the pleadings need not show what particular clause of the constitution is in question.

3. SAME—DUE PROCESS OF LAW.
   Whenever the right or title of either party is grounded upon state legislation which undertakes to transfer to him property belonging to the other, without due process of law, there is a controversy as to the operation and effect of the constitution, to which the federal jurisdiction attaches.

4. SAME—PLEADING.
   An averment by plaintiff that it "is the owner in fee of the said" property in suit, "and by and through its tenants and agents is in possession thereof," if not qualified by subsequent averments, sufficiently alleges plaintiff's ownership upon an issue as to whether property of plaintiff is claimed by defendant under a legislative act, which involves the taking of plaintiff's property without due process of law.

Bill by the Crystal Springs Land & Water Company and S. G. Murphy against the city of Los Angeles.

J. S. Chapman and White & Monroe, for complainants.
Lee & Scott, C. McFarland, and W. E. Dunn, for defendant.

WELLBORN, District Judge. This is a suit to quiet title to certain waters, water rights, and the works therewith connected, hereinafter mentioned. Defendant demurs to the bill, for lack of jurisdiction in the court, and because complainants do not show themselves entitled to equitable or any relief. The briefs of both parties are devoted mainly to the former ground of demurrer, and the same observation will apply to this opinion. The bill is, necessarily, somewhat voluminous, but the material facts therein al-

leged may be summarized, with sufficient clearness for present purposes, in a narrow compass, and as follows:    One of the plaintiffs, the Crystal Springs Land & Water Company, is the owner of certain lands (4.9 acres), situated in the county of Los Angeles, Cal., and the grantee of the right to develop water upon certain other lands, adjacent to those first mentioned.    The lands so owned by said company, and those upon which it has the aforesaid right to develop water, are parts of two Mexican grants, the Rancho Los Felis and the Rancho San Rafael, adjoining and to the north of said city, and through which runs the Los Angeles river.    These grants were duly confirmed by the commissioners appointed under the act of congress for the settlement of private land claims in California, approved March 3, 1851, and upon them patents were duly issued.    By means of tunnels, pipes, and other agencies, said company has developed, on said lands, from waters percolating beneath the surface thereof, 700 inches of water, under a 4-inch pressure, which it is now supplying to the city of Los Angeles and its inhabitants, for domestic and other uses.    Of the waters so developed, said company is the owner in fee, its ownership being derived, as hereinafter more particularly noticed, from said Mexican grants, and therefore within the protection, as plaintiffs claim, of the treaty of Guadalupe Hidalgo.    The interest of the plaintiff Murphy in said company's property is that of a trustee, under a certain deed of trust, to secure an issue of bonds to the amount of $500,000, and executed by said company August 1, 1890.    The city of Los Angeles was organized under the laws of California, and its charter was on the 26th of March, 1874, amended by an act of the legislature of said state, which said act, in terms, granted to said city, to be held and enjoyed in absolute ownership, the full, free, and exclusive right to all of the water flowing in the river Los Angeles at any point from its source or sources to the intersection of said river with the southern boundary of said city, and also the right to develop, economize, use, and utilize all waters flowing beneath the surface in the bed of said river, at any point or points between the points of termini thereinabove given; excepting and reserving from the operation of said grant, unless the same should be condemned and taken for public use, all vested private rights to said water flowing upon the surface or beneath it in the bed of said river.    Subsequently, on the 1st day of April, 1876, the legislature of said state passed other acts amendatory of said charter, each of said acts making again to said city the same grant of water as that provided for in the first of said acts, to wit, the act of March 26, 1874.    Said city of Los Angeles claims that, as the successor of the Mexican pueblo of Los Angeles, and by virtue of the laws of Mexico governing the rights of a pueblo to waters and streams flowing through said pueblo, and by the acts of the legislature aforesaid, it is the sole and exclusive owner of all the waters flowing in the Los Angeles river from its source or sources to the southern boundary of said city, and of the sole and exclusive right to develop waters percolating under the bed of said river or elsewhere, which flow into or become a part of the waters of said

river; and that the whole space between the bases of the mountains each side of said river, above the northern boundary of said city, and including the tract whereon said excavations were made and said pipes laid, constitutes a portion of the bed of said river, within the meaning of said acts of the legislature of the state of California; and that all of the waters percolating in the said soil belong to the said city of Los Angeles; and that said tunnels and pipes were excavated and laid without right; and that the same belong to said city; and that said waters so developed and concentrated and flowing in said pipes belong to said city; and, further, that said city, under and by virtue of said acts of the legislature, has the sole and exclusive right to develop the waters percolating in said lands. The bill then alleges that all of said claims made by said city are false and unfounded, and without right in law, but that said claims have greatly depreciated the capital stock of said company, and impaired the security provided by the trust deed above mentioned, and that said waters and water rights are of the value of more than $1,000,000, and prays for a final decree quieting the title of plaintiffs to said waters, water rights, and the works therewith connected.

Plaintiffs insist that there are two grounds either one of which will support the jurisdiction of the court, namely: First, that the suit arises under the treaty of Guadalupe Hidalgo; second, that defendant's claim to said waters and water rights is based on said amendments to its charter, which amendments, if construed as making the grant so claimed by defendant, are repugnant to the constitution of the United States, and therefore the case is one arising under the constitution of the United States. The defendant controverts both of these grounds. I shall consider them in the order of their statement.

1. The authorities which bear upon said issues consist of three classes of cases: First, those relating to the re-examination by the supreme court of the United States of decisions made by the highest court of a state in which such decisions could be had; second, suits removed, or sought to be removed, before trial, from the state into the United States courts; third, suits brought originally in the United States courts. It is true, as suggested by counsel for plaintiffs in their last brief, that dismissals of the writs of error in cases of the first class do not show that the suits could not have been maintained if originally brought in the federal court, because the appellate jurisdiction of the supreme court of the United States to review the decision of a state court requires two conditions: First, a federal question; second, its decision in a particular way, —whereas in the third class of cases above mentioned, in which category falls the present one, a federal question is the only prerequisite. This distinction, however, between the decisions in the first and third classes of cases, does not obtain between the second and third classes, for the reason that jurisdiction in a case of removal, and jurisdiction where the suit is originally brought in the federal court, are regulated by statutes whose language is substantially, if not literally, the same. The circuit courts were by

the act of congress of March 3, 1875, given original jurisdiction of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority. 18 Stat. 470. Section 2 of the same act provides for the removal of cases from the state courts into the federal courts, and the enumeration of the cases in which removals are authorized is in the same language as that employed, in the first section, to enumerate the cases where original jurisdiction exists. Prior to this time the mere involvement in a suit of a federal question did not authorize its removal. By the act of August 13, 1888, which limits the right of removal to defendants, and is otherwise amendatory of the aforesaid act of 1875, it is provided that the removal may be had in any case where original jurisdiction exists, without enumerating the cases. 1 Supp. Rev. St. 611. From this short review of the acts of congress it will be seen that the decisions of the courts in removal cases are directly applicable here, because the right of removal depends upon language similar to that which confers original jurisdiction.

Now, with reference to the right of removal the supreme court has said:

" 'Before a circuit court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts, "in legal and logical form," such as is required in good pleading, that the suit is one which "really and substantially involves a dispute or controversy" as to a right which depends upon the construction or effect of the constitution or some law or treaty of the United States.' * * * Under the act of 1875, for the purposes of removal, the suit must be one 'arising under the constitution or laws of the United States, or treaties made or which shall be made under their authority'; that is to say, the suit must be one in which some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution, or a law or treaty of the United States, or sustained by a contrary construction. Starin v. New York, 115 U. S. 257, 6 Sup. Ct. 28, and cases there cited." Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030.

To same effect is the opinion in Starin v. New York, supra, from which I extract the following:

"The character of a case is determined by the questions involved. Osborn v. Bank, 9 Wheat. 824. If from the questions it appears that some right, title, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, the case will be one 'arising under the constitution or laws of the United States,' within the meaning of that term as used in the act of 1875; otherwise not. Such is the effect of the decisions on this subject." Starin v. New York, 115 U. S. 248, 6 Sup. Ct. 28.

To the quotation last above given, the court cites a large number of authorities.

Again, it is authoritatively declared:

"That a case in law or equity consists of the right of one party, as well as of the other, and may properly be said to arise under the constitution or a law of the United States whenever its correct decision depends on the construction of either; * * * that it is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the constitution or laws of the United States;

but, when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is within the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it." New Orleans, M. & T. Ry. Co. v. Mississippi, 102 U. S. 135.

Having now ascertained the authoritative interpretations of the provisions of those acts of congress which confer jurisdiction upon the federal courts in suits arising under the constitution or laws or treaties of the United States, we come to the question whether or not the mere fact that both parties claim under Mexican grants, confirmed and patented by the United States, brings the pending suit within the scope of said provisions. This question, I think, is conclusively and negatively answered in Phillips v. Association, 124 U. S. 605–612, 8 Sup. Ct. 657, 658, and Powder Works v. Davis, 151 U. S. 389–391, 14 Sup. Ct. 351, 352. In the former of these cases occurs the following paragraph, which is quoted with approval in the latter case:

"Article 8 of the treaty protected all existing property rights within the limits of the ceded territory, but it neither created the rights nor defined them. Their existence was not made to depend on the constitution, laws, or treaties of the United States. There was nothing done but to provide that if they did in fact exist under Mexican law, or by reason of the action of Mexican authorities, they should be protected. Neither was any provision made as to the way of determining their existence. All that was left by implication to the ordinary judicial tribunals. Any court, whether state or national, having jurisdiction of the parties and of the subject-matter of the action, was free to act in the premises."

While it is true that both of these cases involve only the appellate jurisdiction of the supreme court of the United States to reexamine the final judgment of a state court, still the decisions, however great the difficulty, suggested by counsel for plaintiffs, of reconciling them with the reasoning of Judge Story in Martin v. Hunter, 1 Wheat. 304–382, necessarily rest upon the proposition that the mere fact that both parties claim under Mexican grants does not present a federal question. Is there, then, in the case at bar, and bearing upon the question of jurisdiction, anything more than the mere fact that both parties claim under such grants? If this question should be determined solely from the briefs of the parties, there is a material jurisdictional fact, which exists in and distinguishes the present case from both Phillips v. Association and Powder Works v. Davis, namely, a real and substantial controversy over the construction of the treaty. This controversy is begun by the defendant itself, on the second page of its brief, in the contention that complainants are not within the protection of the eighth article of the treaty, because said article applies only to Mexicans who did not elect to become citizens of the United States, and their heirs and grantees, and that plaintiffs are not within this category. This contention complainants, in their brief, resist, partly as follows:

"But we had supposed it would be somewhat singular if these treaty guaranties were to be considered as purely personal matters, limited to the Mexican citizens alone, and extending no further; for any such narrow construction of the treaties would shear them of the protection of the Mexican owners.

One of the highest rights of property is the right to dispose of it, and a protection which is purely personal, and does not pass to an assignee or grantee, is but an indifferent protection of the Mexican owner. No such narrow construction is permissible, and we respectfully submit that the case of New Orleans v. Armas, 9 Pet. 223, gives not the slightest color to such a proposition."

Thus it appears that, at the very threshold of this argument, the court is confronted with an earnest denial and assertion from defendant and complainants, respectively, of the applicability of the treaty. How else than by a construction of the treaty can this controversy be determined? If there were nothing else in the case, I should be disposed to think that, because of the controversy just mentioned, the suit was one arising under the treaty; but back of this controversy over the construction of the treaty is the question whether or not said controversy is material,—in other words, whether or not the rights of the complainants are dependent upon the treaty. Suppose the eighth and ninth articles had been altogether omitted, and that the treaty was otherwise silent as to rights of property in the ceded territory; would it not, by the law of nations, have been obligatory upon the United States to afford such rights protection as ample as that declared in said articles? See Botiller v. Dominguez, 130 U. S. 238, 9 Sup. Ct. 525; U. S. v. Moreno, 1 Wall. 400–405; Mitchell v. U. S., 9 Pet. 710. And, if this be so, does it not follow therefrom that a dispute or controversy about the construction of the treaty is irrelevant, and therefore neither real nor substantial? These are questions, however, which it is unnecessary for me to answer, as I shall leave undetermined the issue to which they relate,—i. e. whether or not the suit arises under the treaty,—and rest my decision upon another branch of the case.

2. Plaintiffs further contend that the suit is one arising under the constitution of the United States, because defendant claims the property in dispute, and grounds the claim upon said amendments to its charter, which amendments, if they authorize said claim, are in conflict with the provision of section 10, art. 1, of the constitution, that no state shall pass any law impairing the obligation of contracts, and the kindred provision of section 1 of the fourteenth amendment, that no state shall deprive any person of life, liberty, or property without due process of law. The federal question here contended for, it will be observed, grows out of, not the deraignment of plaintiffs' title, but an adverse claim, set up by defendant, and involving the operation and effect of the constitution of the United States upon the acts of the legislature of California. As to the pleadings necessary to raise a federal question of this sort, the following extract is in point:

"It is objected, however, by the defendants, that the pleadings do not, in words, say that the statute is void because it conflicts with the constitution of the United States, and do not point out the special clause of the constitution supposed to render the act invalid. It would be a new rule of pleading, and one altogether superfluous, to require a party to set out specially the provision of the constitution of the United States on which he relies for the action of the court in the protection of his rights. If the courts of this country, and especially this court, can be supposed to take judicial notice of any-

thing without pleading it, it is the constitution of the United States. And if the plaintiff and defendant, in their pleadings, make a case which necessarily comes within some of the provisions of that instrument, this court surely can recognize the fact without requiring the pleader to say in words: 'This paragraph of the constitution is the one involved in this case.' " Bridge Proprietors, Passaic & Hackensack Rivers, v. Hoboken Land & Imp. Co., 1 Wall. 116.

The next question to be determined is: When does a suit come within the provisions of, or, in other words, arise under, the constitution of the United States? This question has been somewhat fully discussed in the preceding pages, and to what is there said I shall now only add the following extract from one of the authorities cited by defendant:

"A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the constitution or laws of the United States. The decision of the case must depend upon that construction. The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the constitution or laws upon the facts involved." Water Co. v. Keyes, 96 U. S. 199.

Now, it is hardly necessary to fortify with precedents the proposition that an act of a state legislature which undertakes to transfer to one person property belonging to another is not due process of law; and whenever, in any suit, the right or title of either party is grounded upon such state legislation, there is "a controversy between the parties in regard to the operation and effect of the constitution * * * upon the facts involved," and therefore the federal jurisdiction attaches. As illustrating this rule, however, and the kindred rule relating to state laws impairing the obligations of contracts, the following may be consulted: Field, Fed. Courts, § 122; Cooley, Const. Lim. pp. 351–353; White v. Greenhow, 114 U. S. 307, 5 Sup. Ct. 923, 962; Smith v. Greenhow, 109 U. S. 669, 3 Sup. Ct. 421; Bridge Proprietors, Passaic & Hackensack Rivers, v. Hoboken Land & Imp. Co., 1 Wall. 116 (requisite pleadings); Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501; Citizens' St. Ry. Co. v. City Ry. Co., 56 Fed. 746; Hamilton Gaslight & Coke Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90. From the opinion in the last case, I quote as follows:

"We sustain the jurisdiction of the circuit court because it appears that the defendant grounded its right to enact the ordinance in question, and to maintain and erect gas works of its own, upon that section of the Municipal Code of Ohio, adopted in 1869 (now section 2486 of the Revised Statutes), providing that the city council of any city or village should have power, whenever it was deemed expedient and for the public good, to erect gas works at the expense of the corporation, or to purchase gas works already erected therein, which section, the plaintiff contends, if construed as conferring the authority claimed, impaired the obligation of its contract previously made with the state and city."

In the case at bar, can the jurisdiction of this court be sustained because of any claims of defendant, grounded upon its charter amendments, to the waters and water rights, tunnels and pipes, described in the complaint? This question may be resolved into three elementary ones: First. Do plaintiffs own said waters and water rights, tunnels and pipes? Second. Does defendant claim said

property? Third. Does this claim rest, in whole or in part, on said acts of the legislature? An affirmative answer to each one of these questions is essential to the jurisdiction of the court. With reference to the second and third, it must be remembered that the merits of the claims therein mentioned are not, so far as the jurisdictional inquiry or any other branch of the demurrer is concerned, at all involved. The point to be determined is not whether defendant's claims are well or ill founded, i. e. not what said amendments really grant, but simply, does defendant claim said property, and, if so, is the claim grounded, wholly or at all, upon said amendments? With this preliminary understanding, the second and third questions are readily answered in the affirmative, for the bill expressly alleges that defendant claims said waters and connected works, and that this claim is grounded, in part at least, on said acts of the legislature. This leaves, then, for consideration, only the first of the three questions above stated, namely, do plaintiffs own the property in dispute? And here, again, we must, of course, look exclusively to the bill. If it alleges plaintiffs' ownership, either as an ultimate fact, or as a conclusion of law from other sufficient facts particularly pleaded, the first question is, as surely as the others, answerable in the affirmative. Where ownership is alleged as an ultimate fact, the allegation must simply be accepted as true. Where it is alleged as a conclusion of law from facts particularly set forth, the court must look to such facts, and determine therefrom the question of ownership, regardless of the pleader's conclusion. This distinction is important, as it serves to mark the ground of my decision. What, then, is the character of the bill in the respect indicated? Paragraph 12 is as follows:

"Your orators further state and show that the said Crystal Springs Land and Water Company is the owner in fee of the said pipes and the said percolating waters so developed, and, by and through its tenants and agents, is in the possession thereof. * * *"

This paragraph, standing alone, would certainly be an unqualified averment of ownership. Is there anything else in the bill changing the character of this averment? I answer, "No," although to my mind the question is not entirely free from difficulty. Paragraphs 10 and 15 relate to the sources of plaintiffs' title, and are as follows:

"(10 Your orators further state and show that all of the said development was done upon lands either belonging to the said Crystal Springs Land and Water Company, or through the lands upon which the rights to make such development had been granted by the said G. J. Griffith, the owner of the said lands; and by reason of the said grant and the ownership of the said lands, and the development of the said waters, by means of the said excavations and the pipes laid therein, the said Crystal Springs Land and Water Company became, and ever since has been, the owner of the said waters and water pipes, and still is the owner thereof, subject to the rights of the said S. G. Murphy, one of the plaintiffs herein."

"(15) And your orators further show, upon information and belief, that, under the laws of Spain and Mexico, the grantees of the said grants made by the Spanish and Mexican governments of the said Ranchos San Rafael and Los Felis, the water percolating in the soil thereof passed with the said grants, and became the property of the owner of said lands, as part and parcel of said lands; and your orators' claim in and to said waters so collect-

ed together by means of the said excavations and the said pipes, and so by them conducted to the works of said plaintiffs herein, and distributed by their agents and tenants to the people of the city of Los Angeles, and to the said city, for the uses and purposes aforesaid, is derived from, through, and under the said grants made by the said Spanish and Mexican authorities and the patents issued by the United States as hereinbefore alleged; and the said rights of your orators are protected by the treaty of Guadalupe Hidalgo, between the United States and the republic of Mexico; and the said title to said water, and rights to the use thereof, were confirmed by the authorities of the United States, by and through the proceedings aforesaid."

This partial deraignment of plaintiffs' title, considered in connection with the claims which it is elsewhere in the bill alleged defendant asserts, might seem at first blush to so qualify the general averment of plaintiffs' ownership, in paragraph 12, as to raise, for present determination, the question, together with its legal consequences, as applied to the case at bar, whether in the territory of California, before its cession by Mexico to the United States, the right to develop percolating waters which, through natural processes, found their way ultimately into a stream flowing through a pueblo, was acquired by the pueblo, in virtue of its organization, or was included in a grant, by the Mexican government to an individual, of the soil through which said waters percolated, or was reserved by said government for the use of all its inhabitants. A careful reading, however, of the three paragraphs just quoted, satisfies me that this question does not arise on demurrer. Paragraphs 10 and 15, I think, are to be viewed only as supports for plaintiffs' contention that the suit arises under the treaty of Guadalupe Hidalgo. However this may be, these two paragraphs, while they would probably confine plaintiffs, in their proof of ownership, to the source indicated, are not such a deraignment of title as would make paragraph 12 the mere statement of a conclusion of law. This last-mentioned paragraph, therefore, must be construed as the distinct averment of an ultimate fact, namely, plaintiffs' ownership, and, as such, including, by unavoidable implication, all probative facts essential to the existence of such ultimate fact. Heeser v. Miller, 77 Cal. 192, 19 Pac. 375; Churchill v. Lauer, 84 Cal. 233, 24 Pac. 107.

Now, the bill does not, in terms, deny that the waters in dispute, prior to their development by plaintiffs, flowed into or became a part of the Los Angeles river; but if it were true, about which, however, I do not at this time express or intimate any opinion, that before the cession of California a pueblo therein had the exclusive right to all percolating waters which ultimately form a part of the stream flowing through the pueblo,—and this is the most favorable view for defendant,—still the bill would be good on demurrer, because in that event the averment of plaintiffs' ownership would necessarily imply that said waters, prior to their development, did not flow into or become a part of the Los Angeles river. My opinion is that the bill states a case within the jurisdiction of this court, and entitling plaintiffs to equitable relief. Demurrer overruled, and defendant assigned to answer the bill at the rule day in September next.