CRYSTAL SPRINGS LAND & WATER CO. et al. v. CITY OF LOS ANGELES.

(Circuit Court, S. D. California. July 9, 1897.)

No. 583.

**1. FEDERAL COURT—JURISDICTION—MEXICAN GRANTS.**

When both parties claim under Mexican grants, confirmed and patented by the United States in accordance with the provisions of the treaty of Guadalupe Hidalgo, and the controversy is only as to what were the rights thus granted and confirmed, the suit is not one arising under said treaty, so as to confer jurisdiction on a federal court.

**2. SAME—ALLEGATIONS OF BILL—EFFECT OF DISCLAIMER ON ANSWER.**

When the only ground of federal jurisdiction grows out of allegations in the bill that defendant's claim of title is based in part on certain acts of a state legislature which attempt to transfer to him the title held by complainant's grantors at the time of their passage, the court will not retain jurisdiction when an answer is filed by the defendant denying such allegations and disclaiming any title or claim of title not held by him before the passage of said acts.

This was a suit in equity by the Crystal Springs Land & Water Company and S. G. Murphy against the city of Los Angeles to quiet title to certain waters, water rights, and works connected therewith. A demurrer to the bill was overruled (76 Fed. 148), and defendant now moves to dismiss the bill for want of jurisdiction.

White & Monroe and Chapman & Hendrick, for complainants.

W. E. Dunn, W. E. Lee, and Lee & Scott, for defendant.

WELLBORN, District Judge. The present hearing is on a motion to dismiss the bill for want of jurisdiction. Jurisdictional issues were raised at an earlier stage of the suit by demurrer. Complainants then maintained that the suit was one of federal cognizance, on two grounds: First, that the suit arose under the treaty of Guadalupe Hidalgo; second, that defendant's claim to the water properties described in the bill was based, in part, at least, on acts of the legislature of California, which acts, if construed as making the grants claimed by defendant, are repugnant to the constitution of the United States, and therefore the case is one arising under said constitution. Defendant controverted both grounds. The demurrer was overruled, the court resting its decision on the latter of the above-stated grounds, leaving the former undecided. See 76 Fed. 148. Defendant has since filed its answer, and entered a motion for a dismissal of the suit, on the ground that the answer disclaims, as against vested rights of complainants, any title to said waters through said acts of the legislature. On this motion to dismiss the argument has not been confined to the effect of defendant's alleged disclaimer, but by permission of the court the question as to whether or not the suit arises under the treaty above mentioned has been reargued. The allegations of the bill, as summarized in complainants' last brief, are these:

"On the 22d of March, 1843, a grant was made by the then Mexican governor to Maria Ygnacio Verdugo of a certain tract of land known as the 'Los Feliz Rancho,' which was subsequently confirmed by the proper authorities of the United States; and on the 18th of April, 1871, a patent was duly issued by the United States to the Mexican grantee. * * * And another grant was made

on the 20th of October, 1784, by Pedro Fajes, then the governor under the Spanish government of California, to Julio Verdugo, of another certain tract of land known as the 'San Rafael Rancho,' and which was subsequently, in 1798, confirmed by the Mexican government, and patented on the 28th day of January, 1882, by the said government of the United States, the claim having been finally confirmed on June 4, 1857. * * * On the 26th of October, 1852, the city of Los Angeles filed its petition with the commissioners to settle private land claims for the confirmation of their title to a tract containing sixteen square leagues, granted by the Mexican government to it on the 25th day of August, 1844. The claim was confirmed to four square leagues, rejected as to the rest, and the patent issued on the 9th of August, 1866, and the tract conveyed to the city by that patent upon the said confirmed grant is bounded on the north by the Rancho Los Feliz and Rancho San Rafael. * * * The Los Angeles river rises to the north of the city, flows down through the two ranchos named, and through the city, entering the city on the northern boundary, at or near its middle point, and flowing in a southerly direction. * * * The Crystal Springs Land and Water Company acquired a certain tract in the Los Feliz Rancho, claimed under the said Mexican grant, and patented [giving a description of the tract]. On June 14, 1896, G. J. Griffith owned about 4,900 acres of the Rancho Los Feliz, and granted to the Los Angeles City Water Company the right to develop water on that part of the Los Feliz Rancho belonging to him. * * * The Crystal Springs Land and Water Company had acquired a part of the San Rafael Rancho, and still own it, subject to the rights of Griffith. * * * A certain portion of that rancho contains a large amount of percolating water. * * * The Crystal Springs Land and Water Company had acquired the rights of the Los Angeles City Water Company. * * * Under these rights, to wit, the ownership of a certain portion of the land, and the grant of the right to develop on other portions, they had, within the limits of their ownership, excavated in the soil, and gathered together the percolating waters about seven hundred inches, measured under a four-inch pressure, which they conducted, by means of pipes, to a gate house, at which point the waters so developed are united together, and conveyed through pipes to the city, for the purpose of furnishing the inhabitants of the city with water for domestic purposes. * * * They are the owners of the waters so developed, by virtue of the rights and incidents of ownership passing by the Mexican grants, and their confirmations and the patents of the United States to the said lands. * * * The waters percolating in the soil passed with the grants, and became the property of the owners of the land, and the rights of the plaintiffs are derived from, through, and under the said grants made by the Spanish and Mexican governments, and the confirmation thereof by the United States, and the patents issued, and they are protected by the treaty between the United States and Mexico; and the title in said waters and rights, and to the use thereof, were confirmed by the authorities of the United States, as aforesaid. * * * Other lands, both north and south of the patent boundaries of the city, through which the Los Angeles river flows, were acquired from the Mexican and Spanish governments; and other lands, which became vested in the United States upon the acquisition of California from the Mexican government, through which the river flows, have since been acquired by private parties from the United States, and patents issued. The rights of these parties, both under other Spanish and Mexican claims, and also by patents from the United States, were as riparian owners, and they were entitled to the waters of the river, and the waters percolating in the soil, by virtue of their ownership of the land, whether they ultimately found their way into the Los Angeles river or not. * * * All the waters so taken by the plaintiffs do not diminish the quantity of water flowing in the river. * * * Certain acts of the legislature, one passed on the 26th of March, 1874, undertook to grant to the city of Los Angeles certain rights, and among them the full, free, and exclusive right to all the water flowing in the river from its sources to the intersection of the river with the south boundary of the city, and the right to develop, economize, use, and utilize all waters flowing beneath the surface in the bed of said river, between the points of termini therein, but excepted and reserved from the operation of said grant of the water flowing in said river, unless the same should be condemned for public use, all vested private rights to the said water flowing upon the surface or beneath it in the bed of said river. * * * An act passed the first day of April, 1876, made a similar grant.

* * * In another act of the same kind, passed in March, 1878, the exceptions in favor of private rights were not made. * * * The city of Los Angeles claims that the city, as the successor of the Mexican pueblo of Los Angeles, and by virtue of the laws of Mexico governing, regulating, and fixing the rights of the pueblo to the waters of the river flowing through it, and the said several acts of the legislature referred to, is the sole and exclusive owner of all the waters flowing in the Los Angeles river, from its sources to the southern boundary of the city, and the exclusive right to develop waters percolating under the bed of the river, or elsewhere, which flow into or become a part of the waters of said Los Angeles river, and claims that the development made by the Crystal Springs Land and Water Company was without right, and the water belonged to the city."

The prayer of the bill is for a final decree, quieting the title of the complainants to said waters, water rights, and the works therewith connected.

The answer of defendant, or those parts of it which are material to the pending motion, denies the rights asserted by complainants to the water properties in dispute, and that by the laws of Spain or Mexico, or any other laws, the waters percolating in the soils of the Ranchos San Rafael and Los Feliz passed by the grants of said ranchos; and admits that defendant claims, as the successor of the Mexican pueblo of Los Angeles, by virtue of the laws of Mexico, and said several acts of the legislature of California, said water properties; but denies that it claims that said acts of the legislature "granted to the city of Los Angeles * * * any vested private right, if any, to the water flowing or being upon the surface or beneath it in the bed of said Los Angeles river, or any water or right whatsoever, if any, which was at the time of the passage of said acts of the legislature vested in said Los Angeles City Water Company, or its predecessor in interest, or in the predecessor in interest of said Crystal Springs Land and Water Company; but, on the contrary, this defendant disclaims having acquired, under any of said acts of the legislature, any right, if any, to the water flowing upon the surface or beneath it in the bed of said river, or any other water or right whatsoever, if any, which was at the time of the passage of said acts vested in the said Los Angeles City Water Company, or its predecessor in interest, or in the predecessor in interest of said Crystal Springs Land and Water Company, or in any private individual or corporation; and this defendant denies that it claims, or ever claimed, under or by virtue of said acts of the legislature, or any of them, the right to develop waters percolating in the bed of said river, or elsewhere, without having first obtained the right of entering upon the land so to develop from the owner of the soil where such development should be made, either by grant from such owner or by condemnation of such right and making compensation to said owner therefor or otherwise." And further denies "that it claims, or .ever claimed, that there was granted by said acts of the legislature, or any of them, to the city of Los Angeles, * * * any right, if any, to develop waters percolating under the bed of said Los Angeles river, or elsewhere, which was at the time of the passage of said acts vested in any private individual or corporation, or in said Los Angeles City Water Company, or its predecessor in interest, or in the predecessor in interest of the said Crystal

Springs Land and Water Company; and this defendant disclaims that said acts of the legislature, or any one or more of them, had the effect of granting to this defendant any right, if any, to develop water percolating in the bed of said Los Angeles river, or elsewhere, which was at the time of the passage of said acts vested in any private person or corporation, or in said Los Angeles City Water Company, or its predecessor in interest, or in the predecessor in interest of said Crystal Springs Land and Water Company." And further "denies that it claims under or by virtue of said acts of the legislature, or any of them, or any other act of said legislature, the right, if any, to develop the waters alleged to be percolating in the land mentioned in said paragraph 23, which was at the passage of said acts vested in any private individual or corporation, or which was at the passage of said acts vested in said Los Angeles City Water Company, or its predecessor in interest, or in the predecessor in interest of said Crystal Springs Land and Water Company, and which has not since been acquired by this defendant other than by said acts of the legislature; and this defendant disclaims having acquired any such right under or by virtue of said acts of the legislature, or any of them."

As already indicated, the questions to be decided on the pending motion, and the pleadings, whose material averments I have recapitulated, are two: First. Does the suit arise under the treaty of Guadalupe Hidalgo? Second. Assuming, what has heretofore been decided by me (76 Fed. 148), that, on the face of the bill, by reason of its allegations to the effect that defendant's claim is based upon said acts of the legislature of California, and that said acts, if construed in accordance with such claim, are violative of the constitution of the United States, a federal question is presented, does the answer of the defendant contain such a disclaimer as eliminates from the suit this federal question?

1. A careful review of the arguments advanced and precedents invoked respectively by complainants and defendant satisfies me that Phillips v. Association, 124 U. S. 605–612, 8 Sup. Ct. 657, and Powder Works v. Davis, 151 U. S. 389–391, 14 Sup. Ct. 350, cannot, as to their essential features, be distinguished from the case at bar, but are conclusive against complainants' contention that the suit arises under the treaty of Guadalupe Hidalgo. The principle of the two cases last cited, as I understand them, is this: Where the parties claim under Spanish or Mexican grants, confirmed and patented by the United States, and the controversy is only as to what were the rights acquired by the parties respectively, or their predecessors in interest, under the Spanish or Mexican governments, it being conceded that the rights so acquired, whatever they may have been, were included in the confirmation and quitclaimed through the patent of the United States, federal jurisdiction does not exist; and it is immaterial whether such rights were acquired through the original grants or transactions subsequent thereto. In the case at bar, as appears from the pleadings, defendant concedes the validity of the Mexican and Spanish grants, and patents issued thereon, through which complainants derive title, and that said grants and patents include the lands

they purport to grant. The matter in dispute is whether or not the waters percolating under said lands passed with the original grants thereof, and the determination of this question does not require a construction of the constitution or any treaty or statute of the United States, but depends upon the laws of Mexico and Spain. Careful reexamination of New Orleans v. De Armas, 9 Pet. 224, dismissed for want of jurisdiction, further satisfies me that I did not give to said case, in my former opinion, suitable weight or scope. Whether or not that case sustains the contention in support of which it was invoked by the defendant herein, namely, that complainants' title is not protected by the treaty of Guadalupe Hidalgo, is immaterial, in view of the ruling which I have just indicated. For, if it be conceded that complainants' title is protected by said treaty, still, in legal contemplation, the suit does not arise thereunder, because the controversy which it involves is not over the construction of the treaty, but as to the validity of conflicting claims of title under Spanish and Mexican grants prior to the treaty. The purpose for which I have adverted, in this connection, to the case of New Orleans v. De Armas, is to call attention to the fact that some of the utterances of the court therein are strongly confirmatory of the principle enunciated in Phillips v. Association and Powder Works v. Davis, supra. The first paragraph of the syllabus in said case of New Orleans v. De Armas is as follows:

"A lot of ground situated in the city of New Orleans, which was occupied, under an incomplete title, for some time, by permission of the Spanish government, granted before the acquisition of Louisiana by the United States, was confirmed to the claimants under the laws of the United States, and a patent was issued for the same on the 17th day of February, 1821. The city of New Orleans, claiming this lot as being part of a quay dedicated to the use of the city in the original plan of the town, and therefore not grantable by the king of Spain, enlarged the levee in front of New Orleans so as to include it. The patentees from the United States brought a suit in the district court of the state of Louisiana for the lot, which pronounced judgment in their favor, and that judgment was affirmed by the supreme court of the state. The judgment was removed to this court, under the twenty-fifth section of the judicial act. A motion was made to dismiss the writ of error for want of jurisdiction."

And directly in point are the following quotations from the opinion of the court:

"The appellees claim title to a lot of ground in the city of New Orleans, as purchasers from the heirs of Catherine Gonzales, the widow of Thomas Beltran, alias Bertrand, who had been in possession of the lot for several years, by permission of the Spanish government. This incomplete title was regularly confirmed under the laws of the United States, and a patent was issued for the premises to Catherine Gonzales on the 17th of February, 1821. The city of New Orleans, claiming this lot as being part of a quay dedicated to the use of the city in the original plan of the town, and therefore not grantable by the king, has enlarged the levee so as to embrace it. The appellees brought their petitory action in the district court of the state of Louisiana, praying to be confirmed in their rights to the said lot of ground, and that the corporation might be enjoined from disturbing them in the exercise thereof. * * * The controversy in the state court was between the two titles; the one originating under the French, the other under the Spanish, government. It is true, the successful party had obtained a patent from the United States, acknowledging the validity of his previous incomplete title under the king of Spain. But this patent did not profess to destroy any previous existing title, nor could it so operate, nor was it understood so to operate by the state court. It appears from the petition filed in

the district court that the patent was issued in pursuance of the act of the 11th of May, 1820, entitled 'An act supplementary to the several acts for the adjustment of land claims in the state of Louisiana.' That act confirms the titles to which it applies 'against any claim on the part of the United States.' The title of the city of New Orleans would not be affected by this confirmation. But, independent of this act, it is a principle applicable to every grant that it cannot affect pre-existing titles. U. S. v. Arredondo, 6 Pet. 738. The judgment of the state court appears on the record to have depended on, and certainly ought to have depended on, the opinion entertained by that court of the legal rights of the parties under the crowns of France and Spain. The case involves no principle on which this court could take jurisdiction which would not apply to all controversies respecting titles originating before the cession of Louisiana to the United States. It would also comprehend all controversies concerning titles in any of the new states, since they are admitted into the Union by laws expressed in similar language."

These quotations, in so far as they state the facts and enunciate the principles on which the court denied the federal character of the controversy there involved, apply with uncommon aptness and precision to the case at bar.

The authorities relied on by complainants have had from me close attention, but I do not think they overthrow the principle of the cases hereinbefore cited.

In Glasgow v. Baker, 128 U. S. 560, 9 Sup. Ct. 154,—writ of error to the supreme court of Missouri,—plaintiffs and defendants respectively claimed under different acts of congress, the final decision of the state court being in favor of the defendants, and therefore the suit was clearly within the jurisdiction of the supreme court.

Knight v. Association, 142 U. S. 161-216, 12 Sup. Ct. 258,—writ of error to the supreme court of California,—was also clearly a suit of federal cognizance, because the contest was between titles derived, one through a grant from the state of California, and the other through a patent issued by the government of the United States; and the decision of the state court was against the validity of the title claimed under authority of the United States. The same remarks, substituting the state of Oregon for the state of California, apply to Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548.

McDonogh v. Millaudon, 3 How. 693,—writ of error to the supreme court of Louisiana,—cannot be regarded as favorable to complainants herein, as shown by the following quotation:

"The state court held McDonogh's title to be valid to every extent that it has been recognized by the United States, and only applied the local laws of Louisiana in its construction, so far as they had a controlling influence on the manner in which the side lines should be extended from the Mississippi river towards Lake Maurepas; and as, in so doing, neither the treaty of 1803 nor any act of congress or authority exercised under the United States was drawn in question, this court has no jurisdiction to revise the decision of that court, for which reason the cause must be dismissed."

Baldwin v. Starks, 107 U. S. 463, 2 Sup. Ct. 473, was wholly unlike the case at bar, as shown by the following extract from the opinion of the court:

"This is a writ of error to the supreme court of the state of Nebraska, and the jurisdiction of this court is questioned. The substance of the original bill in the state court is that, in a contest for the right to enter a tract of land between Starks and Van Pelt, before the land department, the secretary of the interior

erroneously decided in favor of Van Pelt, to whom a patent was issued; and the prayer of the bill is that Baldwin, who holds under Van Pelt, shall be decreed to hold the title in trust for Starks, and convey it to him, and be enjoined from prosecuting further an action of ejectment against plaintiff, which he has commenced for the land in controversy. That the decree which granted this relief denied to plaintiffs in error the right which they asserted under the patent from the United States, and was a decision against the title so asserted, and is, therefore, within section 709 of the Revised Statutes, is too well settled by numerous similar cases decided in this court to admit of further question."

To show, at a glance, the precise point of this decision, I quote that part of said section 709 pertinent thereto, as follows:

"A final judgment or decree in any suit in the highest court of a state in which a decision in the suit could be had * * * where any title * * * is claimed under the constitution, or any treaty or statute of, or commission held, or authority exercised under, the United States, and the decision is against the title * * * specially set up or claimed by either party under such constitution, treaty, statute, commission or authority, may be re-examined and reversed or affirmed in the supreme court, upon a writ of error."

Thus it will be seen that the ground on which federal jurisdiction rested was that plaintiffs in error relied on their patent as an authority emanating from the United States, about whose validity there was real, substantial controversy, and the decision of the state court was against the title so claimed. Undoubtedly the case was within the provision which I have quoted from said section 709 of the Revised Statutes of the United States.

Owings v. Norwood's Lessee, 5 Cranch, 344, was ejectment, originally brought in the state courts of Maryland, between citizens of said state, in which defendant set up an outstanding title in a British subject, one Jonathan Scarth, which title defendant contended was protected by the treaty of peace with Great Britain of 1794 against the confiscatory acts of the state of Maryland, through which plaintiff claimed, and, therefore, that the title to said land was out of the plaintiff. The court of appeals of Maryland, being the highest court of law and equity in that state, decided against the title thus set up. On writ of error the supreme court of the United States held that said action was not a case arising under the treaty, for the reason that Scarth was not a party to the suit, and that neither his title nor that of any person claiming under him could be affected by the decision of the case, and the writ of error was accordingly dismissed. From the opinion of the court, complainants' counsel quote the following:

"Whenever a right grows out of, or is protected by, a treaty, it is sanctioned against all the laws and judicial decisions of the states; and, whoever may have this right, it is to be protected. But if the person's title is not affected by the treaty, if he claims nothing under a treaty, his title cannot be protected by the treaty. If Scarth or his heirs had claimed, it would have been a case arising under a treaty. But neither the title of Scarth nor of any person claiming under him could be affected by the decision of this cause."

In determining the scope of those words in the quotation upon which complainants seem to rely, namely, "whenever a right grows out of or is protected by a treaty, it is sanctioned against all the laws and judicial decisions of the states," and, "if Scarth or his heirs had

claimed, it would have been a case arising under a treaty," it must be remembered that in the supposititious case, to which the words apply, there would have been, not only a claim of protection by, but a real, substantial controversy over the construction of, the treaty. Furthermore, said words were observations of the court, outside the facts of the case, and cannot be accepted as authority to overturn principles enunciated in later cases, and upon facts requiring the application of such principles.

In Kansas Pac. R. Co. v. Atchison, T. & S. F. R. Co., 112 U. S. 414–423, 5 Sup. Ct. 208, the third paragraph of the syllabus is as follows:

"A controversy arises upon laws of the United States where two corporations claim title to the same land under different acts of congress, and the decision depends upon the construction given to those acts."

Obviously, no such facts exist here.

U. S. v. Kingsley, 12 Pet. 475, was a petition for confirmation of certain lands in East Florida, which petitioner alleged had been granted to him on the 20th of November, 1816, while East Florida was held by the crown of Spain. The grant was conditional, and the only issue in the case was whether or not the condition had been complied with. The supreme court, on appeal, declared, among other things, that in maintaining rights of property protected by the Florida treaty reference should be had to "those laws and customs by which such rights were secured before Florida was ceded, or by which an inchoate right of property would, by those laws and customs, have been adjudicated by the Spanish authorities to have become a perfect right." No question whatever was made as to the jurisdiction of the court. The case undoubtedly was one of federal cognizance, not, however, because, in determining its issues, Spanish laws and customs were to be applied, but because the jurisdiction was expressly conferred by the sixth section of the act of congress of May 23, 1828, entitled "An act supplementary to the several acts providing for the settlement and confirmation of the private land claims in Florida" (4 Stat. 285), the tract of land claimed by the petitioner containing a larger quantity of land than the commissioners referred to in said several acts were authorized to decide upon by any of said acts. The other authorities cited by complainants are numerous, and it would unnecessarily prolong this opinion to further pursue their examination in detail. It is sufficient to say that to my mind all of them are readily distinguishable from, while none impair the force of, Phillips v. Association and Powder Works v. Davis, supra, upon which last two cases, as already indicated, I rest my decision of the point now under consideration.

2. The other question involved in the motion to dismiss relates to the effect of defendant's disclaimer. Complainants contend that said disclaimer does not disturb the federal jurisdiction apparent upon the face of the bill, because, among other reasons, of the qualifying words in said disclaimer as to the vested rights of complainants and other private parties. This contention is expressed at page 9 of complainants' brief, as follows:

"And when it disclaims having acquired rights which were vested in any private parties by those acts, it manifestly means, and cannot be construed otherwise than as meaning, simply that it claims that no private party had any private rights to be affected by the grant."

While the disclaimer embraces what is thus suggested by complainants, it goes further, and concludes the defendant, if there were rights vested in private persons at the passage of said acts of the legislature, from asserting title through said acts as against said vested rights. Furthermore, this suit is one to quiet title, and complainants, for cause of action, allege ownership of the property, defendant's claim thereto, and that said ·claim is unfounded. According to my previous rulings herein, the only ground of federal jurisdiction grows out of the allegations of the bill that one of the claims of the defendant is that certain acts of the legislature of California attempt to transfer to it the title held by complainants at the time of their passage, and that said acts, if construed as supporting such claim, are repugnant to the constitution of the United States. Now, if the defendant claims for said acts no other effect than that they transfer to or continue in the city of Los Angeles, as the successor in law of the Mexican pueblo of Los Angeles, only those rights which belonged to the latter, then said acts, if construed as supporting said claim, do not impair ·or affect any vested rights of complainants, and therefore are not repugnant to the constitution of the United States; and it makes no difference, so far as this question is concerned, that defendant claims that the property in question, at the time of the passage of said acts, was the property of said pueblo, and denies that under the laws of Spain and Mexico the waters percolating in the soil of the Ranchos San Rafael and Los Feliz passed by the grants of said ranchos. Such claim and denial by the defendant do not, for their support, require any construction of said acts of the legislature which would make them repugnant to the constitution of the United States. Under the circumstances of this case it cannot be that a technical disclaimer—that is, such an absolute renunciation of title as, by the general rules of equity pleading and practice, would authorize a decree, without costs, quieting complainants' title as against the defendant—is necessary to overcome the jurisdictional allegations of the bill. It is sufficient for this purpose if the answer renounces that particular claim of title which is alleged in the bill as the ground of federal jurisdiction. These jurisdictional allegations, as already stated, are to the effect that defendant makes a particular claim, namely, that certain acts of the legislature of California transfer to it property which, at the date of said acts, belonged to complainants' grantors. Obviously, if the defendant makes no such claim, although it does assert ownership through other sources, the ground of federal jurisdiction alleged in the bill does not exist. This is precisely the situation presented by the answer of the defendant, the city of Los Angeles, and brings the case within the principle announced in Robinson v. Anderson, 121 U. S. 522–524, 7 Sup. Ct. 1011. In that case the court says:

"Upon the pleadings the court dismiss⸱ ᵗ the suit, evidently for the reason that it did .not 'really and substantially involve a dispute or controversy within the

jurisdiction' of that court. Such was the clear duty of the court under the act of 1875, unless from the questions presented by the pleadings it distinctly appeared that some right, title, privilege, or immunity on which the recovery depended would be defeated by one construction of the constitution, or some law or treaty of the United States, or sustained by an opposite construction. Starin v. City of New York, 115 U. S. 257. 6 Sup. Ct. 28. Even if the complaint, standing by itself, made out a case of jurisdiction, which we do not decide, it was taken away as soon as the answers were in, because, if there was jurisdiction at all it was by reason of the averments in the complaint as to what the defenses against the title of the plaintiffs would be; and these were of no avail as soon as the answers were filed, and it was made to appear that no such defenses were relied on. The circuit court cannot be required to keep jurisdiction of a suit simply because the averments in a complaint or declaration make a case arising under the constitution, laws, or treaties of the United States, if, when the pleadings are all in, it appears that these averments are immaterial in the determination of the matter really in dispute between the parties. * * *"

Complainants, in their brief, at pages 36 and 37, say:

"So it will be seen that the disclaimer is of exactly the same kind as in the other suit. It does not disclaim. It asserts the ownership of all these waters by virtue of its ownership of the land, as the successor of the pueblo, claiming that under the laws of Spain and Mexico this sweeping and universal right passes to them by virtue of the operation of those laws upon the Mexican grant and the United States patent, and it does not claim that the legislature passed any rights belonging to the defendants or their predecessors; but it does assert that the defendants and their predecessors do not have any right. Now, it is perfectly obvious upon that statement of the case alone that a federal question is involved. Suppose the state court decides that they have no such rights; is that not a decision against a right or title claimed under the United States patent? And also that it proceeds from the Spanish and Mexican governments, and is protected by the treaty?"

The infirmity of this argument lies in the assumption that the fact of a title being derived through a patent or protected by a treaty of the United States is "title claimed under" such patent or treaty; whereas, the courts uniformly hold that this phraseology, as employed in section 709 of the Revised Statutes, as well as the constitutional and legislative grants of original jurisdiction, implies not merely derivation of title through a patent, or protection from a treaty, but a real, substantial controversy over such patent or treaty. Thus the supreme court of the United States has expressly declared:

"When a suit does not really and substantially involve a dispute or controversy as to the effect or construction" of the constitution, "upon the determination of which the result depends, then it is not a suit arising under the constitution. * * * The judicial power extends to all cases in law and equity arising under the constitution, and these are cases actually, and not potentially, arising, and jurisdiction cannot be assumed on mere hypothesis. In this class of cases it is necessary to the exercise of original jurisdiction by the circuit court that the cause of action should depend upon the construction and application of the constitution, and it is readily seen that cases in that predicament must be rare. Ordinarily, the question of the repugnancy of a state statute to the impairment clause of the constitution is to be passed upon by the state courts in the first instance, the presumption being in all cases that they will do what the constitution and the laws of the United States require. Chicago & A. R. Co. v. Wiggins Ferry Co., 108 U. S. 18, 1 Sup. Ct. 614, 617; and, if there be ground for complaint of their decision, the remedy is by writ of error, under section 709 of the Revised Statutes. Congress gave its construction to that part of the constitution by the twenty-fifth section of the judiciary act of 1789, and has adhered to it in subsequent legislation." City of New Orleans v. Benjamin, 153 U. S. 424, 14 Sup. Ct. 909.

Complainants further contend that there is no disclaimer as to the act of the legislature of California to incorporate the city of Los Angeles, passed April 4, 1850. The answer of defendant, however, on page 11, lines 27 to 39, disclaims not only as to the acts of the legislature particularly pleaded in the bill, but also as to all other acts of the legislature. Another and complete reply to this contention of complainants is that the bill nowhere alleges that defendant claims through said act of 1850, and, therefore, conceding that the court can take judicial notice of it, the act is not material to the case made by the pleadings.

Complainants further contend that defendant's attorneys were without authority to file the disclaimer. This contention, I think, is not well taken. Connett v. City of Chicago, 114 Ill. 233, 29 N. E. 280; Brooks v. New Durham, 55 N. H. 559; City of Pasadena v. Stimson, 91 Cal. 238, 27 Pac. 604; San Francisco Gas Co. v. City of San Francisco, 9 Cal. 473. After full consideration of the bill and answer, it is clear, to my mind, that the controversy between the parties to this litigation concerns the rights respectively acquired by their predecessors in interest, under Mexican and Spanish laws, prior to the treaty of Guadalupe Hidalgo, and that the decision of the case does not require the construction of the constitution, or any treaty or statute of, or authority exercised under, the United States. Defendant's motion allowed, and suit dismissed, without prejudice, for want of jurisdiction.