# PHILLIPS v. MOUND CITY LAND AND WATER ASSOCIATION.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Submitted January 6, 1888. — Decided February 13, 1888.

An adjudication by the highest court of a State that certain proceedings before a Mexican tribunal prior to the treaty of Guadalupe Hidalgo were insufficient to effect a partition of a tract of land before that time granted by the Mexican Government to three persons who were partners, which grant was confirmed by commissioners appointed under the provisions of the act of March 3, 1851, 9 Stat. 631, " to ascertain and settle the private land claims in the State of California," presents no federal question which is subject to review here.

THIS suit was brought for a partition of two adjacent tracts of land in the county of Los Angeles, known respectively as Rancho "San José" and "San José Addition."  The facts were these:

In 1837, the Mexican Government granted to Ygnacio Palomares and Ricardo Vejar the rancho known as "San José." Afterwards, these grantees formed a partnership with Luis Arenas, and the Mexican Government granted to the three

the rancho known as "San José Addition," which adjoined the other. Arenas also in some way acquired an undivided one-third interest in "San José," and then conveyed whatever right he had in the two grants to Henry Dalton.

After this had been done, it is claimed that a partition was made under the authority of an appropriate Mexican tribunal, by which the share of each of three owners in common was set off to him in severalty, and possession taken accordingly. This all occurred before the treaty of Guadalupe Hidalgo, which was proclaimed July 4, 1848. 9 Stat. 922.

On the 29th of September, 1852, Ygnacio Palomares presented his claim to the commissioners appointed under the act of March 3, 1851, 9 Stat. 631, c. 41, to an undivided one-third part of the two ranchos, and asked its confirmation. Henry Dalton, on the same day, presented his claim on account of the two grants, and asked for the confirmation of the specific tracts allotted to him in the alleged partition. On the 9th of October Vejar presented his claim and asked a similar confirmation to that prayed by Dalton. The commissioners confirmed the claims in accordance with the requests of Dalton and Vejar, so as to give each claimant the lands which had been set off to him in severalty by the partition. From these orders of the commissioners appeals were taken by the United States, under the provisions of the statute, to the district court, where decrees were rendered, by which it was ordered and adjudged "that said decision of said board of commissioners be, and the same hereby is, affirmed;" and the title of the appellees adjudged to be good and valid, each to one equal undivided third part of the two tracts, which were then described by metes and bounds.

In accordance with these several decrees of confirmation patents were issued by the United States, that for "San José" being "unto Henry Dalton, Ygnacio Palomares, and Ricardo Vejar, and to their heirs," for "the tract of land known by the name of 'San José' embraced and described in the foregoing survey," (being that set out in the decree,) "but with the stipulation that in virtue of the fifteenth section of the said act," that of March 3, 1851, "neither the confirmation of this said

claim, nor this patent, shall affect the interest of third persons; to have and to hold the said tract known by the name of San José, with the appurtenances, unto the said Henry Dalton, Ygnacio Palomares, and Ricardo Vejar, and to their heirs and assigns forever, with the stipulation aforesaid." The patent for "San José Addition" was in all respects the same except as to the description of the land.

At the hearing of the present suit it was contended that the patents thus issued inured to the benefit of the several grantees according to their respective interests as set off to them in severalty in the alleged partition made under Mexican authority before the treaty, but the Supreme Court of the State decided that no such partition had in fact been made by any judgment of a competent Mexican tribunal, and that both the ranchos were "held and owned by the Mound City Land and Water Association, Louis Phillips, and Lugardo A. de Palomares," who had succeeded to the title of the original patentees, "as tenants in common, each owning an undivided third of said ranchos." It was then ordered that partition be made among the owners, "allotting to each one in severalty one-third of the area of the two ranchos, quantity and quality considered, and so locating the said allotments as to give to each of the said persons the benefit of any improvements he may have placed on any part of said premises, so far as the same may be done without injury to the cotenants, and so as to include in said allotment to said Phillips" certain specified parcels, which it was found he had sold, "so far as the same may be done without injury to the cotenants."

To reverse that decree this writ of error was brought, the object of the plaintiffs in error being to defeat a new partition on the ground that the alleged Mexican partition was valid and binding on the present parties, and that they now hold in severalty what was then set off to their respective grantors, and not as tenants in common of the whole tract.

The case was submitted at the present term on printed arguments, under Rule 20, but at a former term a motion was made by the defendants in error to dismiss for want of jurisdiction, because no federal question was involved. That motion was

continued for hearing with the case on its merits, and is now to be considered.

*Mr. A. T. Britton, Mr. A. B. Browne,* and *Mr. Walter H. Smith* for the motion cited: *Owings* v. *Norwood's Lessee,* 5 Cranch, 344; *New Orleans* v. *De Armas,* 9 Pet. 224; *Choteau* v. *Marguerite,* 12 Pet. 507; *Maney* v. *Porter,* 4 How. 55; *Kennedy* v. *Hunt,* 7 How. 586; *Doe* v. *Eslava,* 9 How. 421; *United States* v. *King,* 3 How. 773; *Gill* v. *Oliver,* 11 How. 529; *Romie* v. *Casanova,* 91 U. S. 379; *Roth* v. *Ehman,* 107 U. S. 319; *San Francisco* v. *Scott,* 111 U. S. 768; *Hastings* v. *Jackson,* 112 U. S. 233.

*Mr. George H. Smith,* opposing, cited: *United States* v. *Arredondo,* 6 Pet. 691, 727; *United States* v. *Delassus,* 9 Pet. 117, 134; *Strother* v. *Lucas,* 12 Pet. 410; *United States* v. *Peralta,* 19 How. 343, 347; *Graham* v. *United States,* 4 Wall. 259, 261; *United States* v. *Pico,* 5 Wall. 536, 539; *Lessee* v. *Clark,* 18 California, 574; *Waterman* v. *Smith,* 13 California, 410; *United States* v. *Sutter,* 21 How. 170; *Castro* v. *Hendricks,* 23 How. 438, 442; *Steinbach* v. *Stewart,* 11 Wall. 566, 574; *Hickie* v. *Starke,* 1 Pet. 94; *Matthews* v. *Zane,* 4 Cranch, 382; *Henderson* v. *Tennessee,* 10 How. 311; *Berthold* v. *McDonald,* 22 How. 334; *United States* v. *Moreno,* 1 Wall. 400.

*Mr. George F. Edmunds* also opposing.

The brief of my associate, *Mr. Smith,* is so complete that I only wish to add one or two considerations.

The fifteenth section of the act of March 3, 1851, providing for settling land claims in California, is as follows: "That the final decrees rendered by the said commissioners, or by the District or Supreme Court of the United States, or any patent to be issued under this act, shall be conclusive between the United States and the said claimants only, and shall not affect the interests of third persons." The effect, therefore, of the confirmation of the Mexican grant in respect of which the question arises, was simply to show that the United States

recognized the Mexican grant, and to leave the rights of the parties under it precisely as they were before. The land commissioners had no power under the law to determine whether the title should be confirmed in severalty or in common, and their confirmation had no effect upon the decree of the Mexican court making partition between the original grantees. Now, in this case, the plaintiffs claim a title in severalty derived by a judgment of the Mexican court before the cession, while the defendants claim against that separate title, and claim a common ownership in the land thus exclusively claimed by the plaintiffs, on the ground that the foreign decree was in some way invalid or inoperative; so that on one side the claim is of a title derived directly from the foreign decree, and on the other a claim against that title. The parties, therefore, do not recognize a common source of title derived from the foreign Government. This case, then, is distinguishable, it is thought, from all those cited in the brief of the other side.

The treaty provided for the security and recognition and protection of existing titles to property. The title in severalty of the plaintiffs in error to the land in question had been established pursuant to Mexican law, and that title it is the duty of the tribunals of the United States to protect when it is assailed. The question, therefore, is not one of the construction of a decree as between two parties, each of whom claims under it, but it is the question of the right of one party claiming against it to overthrow it, and thus destroy the plaintiffs' title arising under it. This, it is submitted, is clearly a question that belongs to this court.

Whether the decree of partition can be maintained, I do not now go into at all, as that question will arise on the merits.

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

Both parties claim under the Mexican grants confirmed by the United States. The patents vested the legal title in the

grantees. By an express provision of the act of March 3, 1851, (§ 15,) they are conclusive "between the United States and such claimants only," and do "not affect the interests of third parties."

The patents, like the original Mexican concessions, are to the grantees as tenants in common. That is not denied. But it is claimed that after the original concessions were made and before the treaty, the title of the parties holding under them was changed from a tenancy in common, each holding an undivided one-third interest in the whole of the tracts, to a divided interest, each holding in severalty for his one-third part the tract which had been allotted to him in the division. That this presents the real question in the case is shown by the assignments of error, which are in their effect no more than that the court erred in holding the alleged Mexican partition to be invalid, when in fact it was good and binding on the parties. The result of the motion to dismiss depends upon whether this is or is not a federal question.

Article VIII. of the treaty protected all existing property rights within the limits of the ceded territory, but it neither created the rights nor defined them. Their existence was not made to depend on the Constitution, laws, or treaties of the United States. There was nothing done but to provide that if they did in fact exist under Mexican law, or by reason of the action of Mexican authorities, they should be protected. Neither was any provision made as to the way of determining their existence. All that was left by implication to the ordinary judicial tribunals. Any court, whether state or national, having jurisdiction of the parties and of the subject matter of the action, was free to act in the premises.

Here the United States have recognized the existence of the right of the original Mexican grantees to the land which has been patented, and by the patents invested them with any title which passed under the treaty from the Mexican Government to that of the United States. As to this there is no controversy now. Neither is there any dispute about the construction of the patents or the decrees on which they rest. Indeed, it was substantially conceded in argument that a decree could

only be given by the District Court, "in view of the contro-
versy disclosed by the petitions," for an undivided interest to
each claimant, leaving it to be determined in some other way
whether there had been a partition or not. The following is
the language of counsel on that subject: "The effect of the
decrees of the district court was . . . simply to leave the
question of partition undetermined; that is to say, if, as
claimed by Palomares, there was no partition, then the land
was confirmed to the parties interested as cotenants; but if,
as claimed by Vejar and Dalton, there was a partition, then
upon well-established principles it was in effect confirmed to
them in segregated portions as allotted to them by the parti-
tion."

This is undoubtedly a fair statement of the effect of the de-
crees and of the patents, and the single question presented to the
court below for determination was, whether there had in fact
been such a partition. To establish this fact proof was made
of what had been done by and before the Mexican tribunal in
that behalf, and the court held that it was insufficient. In so
doing it decided no question of federal law, but only that the
legal effect of what had been done was not such as was required
to bind the parties by the partition. In this particular the case
stands precisely as it would, if, instead of a partition under the
form of a judicial proceeding, one had been made by the vol-
untary conveyances of the parties after the original grants
and before the treaty. Had the effort been in this case to
establish such a partition instead of one through judicial
action, we can hardly believe it would be claimed that a
federal question was presented by a decision that the con-
veyances which were put in evidence did not furnish the
necessary proof. Yet that is substantially this case. A valid
partition before the treaty would have created rights which
the United States would be bound to respect. That is not
denied. Indeed, it is conceded that if a partition was in fact
made, as is claimed, the patents as they now stand inure to
the benefit of the parties according to their respective interests
in severalty, and that a court of equity can give full effect to
what was done by decreeing the necessary conveyances to

perfect the legal titles.   The only question is, whether such a partition was made, and upon that the decision of the state court is final, and not subject to review.   It "drew in question no act of Congress, nor any authority exercised under the Constitution or laws of the United States, and therefore the decision of the state court could not be opposed either to the laws or to any authority exercised under the laws of the United States."   This was said in *Kennedy* v. *Hunt*, 7 How. 586, 593, in reference to the construction which had been given to a Spanish title by a state court, and is equally applicable here.

It follows that

*The motion to dismiss must be granted, and it is so ordered.*