**CITY OF OSCEOLA, IOWA, et al. v. UTILITIES HOLDING CORPORATION.**

No. 9081.

Circuit Court of Appeals, Eighth Circuit.
Jan. 14, 1932.

R. E. Killmar, of Osceola, Iowa (O. M. Slaymaker, of Osceola, Iowa, on the brief), for appellants.

C. J. Lynch, of Cedar Rapids, Iowa (Donnelly, Lynch, Anderson & Lynch and F. L. Anderson, all of Cedar Rapids, Iowa, and J. L. Parrish, of Des Moines, Iowa, on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge.

In April, 1897, the city of Osceola, Iowa, although, apparently, without power so to do,

passed ordinances granting to the Iowa Telephone Company and to the Clearfield & Mount Ayr Telephone Company, their successors and assigns, the right to erect, maintain, and use upon the streets, alleys, and public highways of said city the poles, wires, and fixtures necessary and convenient for supplying to the citizens of said city, and the public communication by telephone or other electric signals. These ordinances were accepted by the two company grantees, and they proceeded immediately to construct their respective systems. The Iowa Company installed a local exchange and began operating it about June, 1897. The Clearfield & Mount Ayr Company began the construction of its lines in the spring and summer of 1897, building about six miles of pole lines in the city, installing a switchboard, and establishing a toll-line station during that period. By September, 1897, it had constructed lines in from the south and west, and, later in the year operated a line to Des Moines. The local exchange of the Clearfield Company was not fully operated until 1901. The acceptance of the franchise grants, and the constructions thereunder above recited, were made prior to October 1, 1897.

The laws of Iowa prior to October 1, 1897 (section 780, Code of Iowa, 1851, and amendment thereto, section 1324, Code of Iowa, 1873), provided that any person or company might construct a telephone line along the highways of the state, and might erect the necessary fixtures therefor. The Iowa Supreme Court has construed this provision of the Iowa law to confer upon those complying with its terms a special franchise in perpetuity, subject only to a proper exercise of the police power and to any expressly reserved power. State v. Iowa Tel. Co., 175 Iowa, 607, 623, 154 N. W. 678, Ann. Cas. 1917E, 539. Acceptance, it would seem, might be made merely by occupancy of the streets for the purpose of telephone operation; and the company can still claim under the state law, even though it commenced operations under a void city franchise ordinance. State v. Chariton Tel. Co., 173 Iowa, 497, 155 N. W. 968.

In March, 1913, the city of Osceola by an ordinance, approved at an election, granted to C. T. Ayres and others a franchise containing certain provisions with respect to rates. Subsequently, and before the institution of this litigation, by mesne conveyances and assignments, the foregoing franchise rights were acquired by appellee. September 17, 1929, the common council of Osceola passed an ordinance fixing the maximum rates to be charged for telephone service within that city. November 16, 1929, appellee filed its bill of complaint, attacking said ordinance as unconstitutional and void as taking complainant's property for public use without due compensation, and without due process of law, and as denying to complainant the equal protection of the law. The cause came for hearing upon the application for temporary injunction, and, prior thereto, the city council repealed the ordinance upon which appellee's bill was based. Finding the validity of that ordinance moot, the court denied the application for injunction, but gave to complainant ten days within which to amend its bill of complaint, upon the following stated considerations: "While there are perhaps other allegations in the petition upon which a Court could determine the matters presented, the Court feels that it would be better practice in the event the plaintiff is claiming on other actions on the part of the city that affect their constitutional rights, that before any action is taken the plaintiff should so declare in its petition in order that the defendant may know the exact position to be taken by the plaintiff company in the prosecution of its application for an injunction and for affirmative relief."

Complainant accordingly amended its bill, averring that the right to fix and regulate telephone rates within the state of Iowa is vested solely in the Legislature of that state. It adopted all the allegations of its original bill with respect to its franchise rights, and declared that the rates specified in the ordinance to C. T. Ayres and others, to which reference has been made, would be confiscatory if enforced. Appellant, answering, denied that complainant had ever acquired any right to operate a telephone system in Osceola, unless under the said franchise granted to C. T. Ayres and others in 1913.

On final hearing, the trial court decreed as follows:

"That the terms of a certain ordinance, known as Ordinance No. 48 and adopted and approved by the defendant city on the 4th of March, 1913, by which there was granted to C. T. Ayres, F. J. Emary and D. M. Gibson and their assigns a franchise to operate a telephone exchange within the said city, are void in so far as they attempt to regulate and fix the rates for telephone service within said city, for the reason that the said defendant city has no power to regulate said rates or contract with respect thereto.

"That the complainant is entitled to a decree of this Court establishing its rights with-

in the City of Osceola, Iowa, as herein set forth.

"That the testimony introduced in this case is not sufficient to satisfy the Court that the defendants will in the, future interfere with the rights of the complainant with respect to the occupancy of the streets and other public places of the defendant city and the collection of lawful and reasonable rates for the service performed and, therefore, that a permanent injunction ought not at this time to be entered, but that the Court should retain jurisdiction of this cause for the purpose of the future adjudication of such issue if occasion therefor arises.

"Wherefore, it is ordered and decreed that the complainant's right to occupy the streets, alleys and other public places of the defendant, City of Osceola, Iowa, for the purpose of constructing, maintaining and operating a telephone plant and by the use thereof rendering telephone service to the public, and the right to charge and receive just and lawful compensation for the service rendered, free and unhampered by the rate provisions contained in the ordinance hereinbefore referred to granting a franchise to Ayres et al., and their successors, under and by virtue of the terms of the franchises acquired by the Iowa Telephone Company, as hereinbefore set out, be and the same are hereby established; all of said rights to be subject to the proper exercise of the police power as the same may be vested in said city.

"The Court retains jurisdiction of this case for the purpose of hearing and adjudicating any question which may arise in the future with respect to any interference of the defendants, or any of them, or their successors in office, with the exercise of the rights herein decreed in favor of the complainant, and reserves to the complainant the right, upon a proper showing, to have this case redocketed for such purpose."

■■ It found expressly that it was not clear that defendants were attempting to interfere with the rights of complainant, or would do so in the future. No other finding was justified by the testimony. The potential effort so to do by the ordinance of September 17, 1929, had been abandoned by the repeal of that ordinance. There remained only the specter of the franchise of 1913 granted to C. T. Ayres and his associates. But the court found that there was no evidence that the city had interfered, or would in future interfere, with the rights of complainant with respect to the occupancy of the streets and public places in the city, and the collection of lawful and reasonable rates for the service performed. This ordinance to Ayres and others had reposed upon the records of the city for a period of sixteen years without suggestion of, or effort toward, enforcement. It was first defensively invoked in the answer of defendants, and is nowhere relied upon by the city as a valid subsisting franchise. In their pleadings, defendants, appellants here, charge merely that appellee is either operating under that franchise or is without franchise or right to operate. That the city has not recognized the validity of the ordinance of 1913 is further evidenced by its passage of the later ordinance of September 17, 1929. The repeal of this latter ordinance, and the total absence of any other threatened interference with the rights of complainant, rendered the controversy moot. Consequently any judgment upon the remaining issues sought to be framed would be purely declaratory in its nature. It is well-settled that the national courts have no power to render such judgments. Muskrat v. United States, 219 U. S. 346, 357, 31 S. Ct. 250, 55 L. Ed. 246; New Jersey v. Sargent, 269 U. S. 328, 330, 46 S. Ct. 122, 70 L. Ed. 289; Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 74, 47 S. Ct. 282, 71 L. Ed. 541; Willing v. Chicago Auditorium, 277 U. S. 274, 289, 48 S. Ct. 507, 72 L. Ed. 880.

■■ Complainant seeks to avoid this consequence by the contention that its suit, as at present framed, is one to quiet title, which it asserts it has the right to maintain. Assuming, without deciding, that a franchise of this nature is a property right susceptible of being quieted, with respect to the alleged right to maintain such an action in the case at bar it is pertinent to remark that, since complainant's rights, if any, emanate from the state and not from the municipality, the state, not the city, would be the proper party to contest such claimed rights. Quieting title against the city could have no final effect and could not estop the state from asserting its rights in the premises. Furthermore, this suit in its inception contained no hint of a purpose to quiet title. The only complaint made was against the ordinance of September 17, 1929, upon the general ground that the rates thereby sought to be established were confiscatory. The repeal of this ordinance rendered the controversy moot. The ordinance of 1913, granting a franchise to C. T. Ayres and others, was incidentally referred to in the original answer of appellants (defendants below), but was not therein, nor in subsequent amendments, counted upon as

a valid subsisting franchise. On the contrary, the insistence of appellants is and has been that appellee has no franchise to conduct a telephone business in said city, nor to use its streets and public places for telephone lines, wires, poles, and equipment. In the amendment to its bill, under leave of court, appellee specifically sets up the Ayres franchise of 1913, attacks the rates therein as confiscatory and imposed without authority in the city council so to legislate. The prayer of the amendment to the bill follows:

"Wherefore, this complainant prays that any acts of the said City and of these defendants of any nature whatsoever whereby they collectively or individually endeavor to exercise jurisdiction over telephone rates, be declared null and void and in violation of the Constitution of the United States and the State of Iowa, for the reasons hereinbefore set forth, and that it be decreed that the City, acting by or through its Common Council or otherwise, has no jurisdiction over the rates to be charged by your orator for telephone service furnished at and in the City of Osceola.

"Your orator further prays that until the final determination of this action and the rendition of the final decree, that the defendants, their successors in office, and those classes of persons whom they represent, be temporarily restrained and enjoined from doing any act or thing whereby it is attempted to exercise any jurisdiction or power over the rates to be charged by this complainant for telephone service in the City of Osceola, or from attempting to regulate said rates, or from doing any act or thing which in any way may interfere with the charging by this complainant for telephone service rendered by it at and in the City of Osceola or the collection of the charges for such service so made by this complainant, and that complainant have such other and further relief as may be agreeable to equity and good conscience, and that upon final hearing said injunction be made perpetual."

There is nothing in the allegations of the bill as amended, nor in the resulting prayer which savors of a suit to quiet title. There is nothing in the entire record to indicate a purpose upon the part of the city and its officers to interfere with the claimed rights of appellee since the repeal of the ordinance of September 17, 1929.

The applicable rule is thus stated in 32 Corpus Juris at page 42: "It is not sufficient ground for an injunction that an injurious act may possibly be committed, or that injury may possibly result from the act sought to be prevented; but, there must be at least a reasonable probability that an injury will be done if no injunction is granted, and not a mere fear or apprehension. Injunctions will not be granted merely to allay the fears and apprehensions of individuals, which, it has been said, may exist without substantial reasons and be absolutely groundless. In these circumstances the mere fact that an injunction would not injure the defendant will not authorize its issuance."

However, the decisions of the Supreme Court would seem effectively to meet this contention of complainant, and still further to establish that this is, in truth, under the facts here presented, a declaratory judgment.

In Devine v. Los Angeles, 202 U. S. 313, 26 S. Ct. 652, 50 L. Ed. 1046, it is said:

"Where diversity of citizenship does not exist a suit can only be maintained in the Circuit Court of the United States on the ground that it arises under the Constitution or laws of the United States, and it does not so arise unless it really and substantially involves a controversy as to the effect or construction of the Constitution or some law or treaty of the United States on the determination whereof the result depends. This must appear from plaintiff's statement of his own claim and cannot be aided by allegations as to defenses which may be interposed."

And then further at page 335 of 202 U. S., 26 S. Ct. 652, 658 the following language appears:

"But complainants, appellants here, deny that the present case was brought under section 738, and say that the bill was one to remove clouds from complainants' titles; that is to say, clouds created by claims and threats, and by the several acts of California including defendant's charters, which complainants ask to be declared invalid.

"We do not understand, however, that a bill will lie to dispel mere verbal assertions of ownership as clouds on title, or, invoking equity interposition on the ground of the removal of clouds, that decrees may be sought adjudging statutes unconstitutional and void. If it were true that the statutes and charters referred to in the bill were unconstitutional, as alleged, they were void on their face, and could not constitute a cloud on complainants' titles."

And again, in Willing v. Chicago Auditorium, 277 U. S. 274, 289, 48 S. Ct. 507, 509, 72 L. Ed. 880, it was said:

"The fact that the plaintiff's desires are thwarted by its own doubts, or by the fears of others, does not confer a cause of action. No defendant has wronged the plaintiff or has threatened to do so."

It follows that the decree below must be reversed, and the cause remanded, with directions to dismiss the bill of complaint without prejudice to the bringing of another action should facts, subsequently arising, involve a substantial judiciable controversy. It is so ordered.